UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-20343-KMW

UNITED STATES OF AMERICA

vs.

ROGER ALEJANDRO PINATE MARTINEZ, and
JORGE MIGUEL VASQUEZ,

Defendants.
_____/

RESPONSE TO MOTION FOR A BILL OF PARTICULARS

The United States opposes the motion for a bill of particulars (ECF No. 53) filed by defendant Roger Alejandro Pinate Martinez and adopted by defendant Jorge Miguel Vasquez (ECF No. 55) (collectively, "the defendants"). Under the guise of seeking particulars, the defendants—citing inapplicable precedent and propounding improper interrogatories—are attempting to obtain a detailed interpretation of the evidence and legal theories the government intends to rely on at trial. Contrary to their claims, the 24-page speaking indictment, three itemized and voluminous discovery productions, the 28-page complaint, and government responses to defense inquiries, provide the requisite facts constituting the offenses charged and sufficiently apprise the defendants of the allegations, well beyond what is necessary for them to prepare a defense and prevent unfair surprise at trial. The defendants' motion is without merit and should, therefore, be denied.

BACKGROUND

This case involves the defendants' efforts to bribe a foreign official in connection with voting machine contracts for the 2016 Philippine elections. On August 8, 2024, the grand jury returned an indictment charging the defendants and others with conspiracy to violate the Foreign Corrupt Practices Act (FCPA) (Count 1), a substantive violation of the FCPA (Count 2), conspiracy to

commit money laundering (Count 3), and three charges of international laundering of monetary instruments (Counts 4-6).  ECF No. 12. ("Ind.").  Juan Andres Donato Bautista—the "foreign official" identified in the indictment—served as Chairman of the Commission on Elections of the Republic of the Philippines (COMELEC) from on or about April 2015 to October 2017.  Ind. at 2.  The indictment describes three contracts valued at approximately $182 million awarded to Company 3 and a Company 1 subsidiary to supply COMELEC with voting machines and related services for the 2016 elections in the Philippines.  *Id.* at 6-7.  The government provided the defendants the identities of all anonymous individuals and entities described in the indictment.

The FCPA conspiracy charge (Count 1) and the substantive FCPA charge (Count 2) track the statutory language of 18 U.S.C. § 371 and 15 U.S.C. §§ 78dd-2 and 78dd-3, and include not only details about the time, place, and nature of the unlawful payments to a foreign official, but also a description of the business nexus of those payments.  Specifically, according to the indictment, a purpose of the FCPA conspiracy was for Pinate, Vasquez, and their co-conspirators "to offer, promise to pay, and pay bribes" to Bautista "in order to obtain and retain contracts with, and receive payment—including releases of value added tax ('VAT') payments—from COMELEC . . . and direct business to" the individuals and entities described in the indictment.  *Id.* at 8-9.

The indictment describes in detail the manner and means by which Pinate, Vasquez, and their co-conspirators sought to accomplish this purpose.  *See id.* at 9-11.  For instance, the indictment spells out how the defendants communicated via personal and non-business email, as well as WhatsApp messaging.  *Id.* at 9.  The government has supplemented these communications referenced in the indictment by producing images of phones and computers that contain these email communications, as well as the actual WhatsApp conversations.  Similarly, the detailed allegations

of an over-invoicing scheme to generate slush funds with bogus fees on voting machines, *id.*, and generation of corrupt payments through fraudulent contracts and sham loan agreements, *id.* at 10, have been augmented with discovery that includes law enforcement interviews of defendant Vasquez describing the over-invoicing scheme and use of fake contracts and loan documents.

The money laundering conspiracy charge (Count 3) and substantive money laundering charges (Counts 4-6) properly track the language of Sections 1956(h) and 1956(a)(2)(A), respectively. The indictment specifically alleges that Pinate, Vasquez, and others "directed and caused Vendor A-Executive . . . to transfer and to attempt to transfer approximately $1,000,000 in bribe payments to and for the benefit of . . . Bautista." *Id.* The indictment further details "a series of transactions, initiating in the Southern District of Florida and elsewhere, involving a network of offshore and domestic bank accounts, intermediaries, and shell and front companies" that have all been identified for the defendants. *Id.* In response to a defense inquiry, the government referred defense counsel to the transactions listed in Count 1 and the substantive money laundering counts (Counts 4-6), which contain detailed descriptions of the dates, amounts, account information, and flow of funds for three wire transfers in the approximate amount of $500,000. *See id.* at 22. The government has also produced mutual legal assistance treaty (MLAT) returns that include bank records of wire transfers in Bautista's bank account and other related accounts in the Philippines.

The defendants have access to another layer of detail about the financial transactions in the 28-page complaint against Bautista. ECF No. 1 ("Compl."). The complaint details the generation of slush funds, *see id.* at 12-18, and the specific dates and amounts of transfers or attempted transfers of bribe payments to Bautista, *see id.* at 18-27.

## PROCEDURAL HISTORY

On August 28, 2024, the government sent defense counsel the first discovery production, which was comprised of Company 1 business records, nine search warrant returns for eight email addresses and one business address, 2703(d) returns and accompanying applications, and evidence obtained through the MLAT process. Through the government's filter team, Vasquez received unfiltered and filtered images of his cellphone and laptop, as well as a filtered version of Pinate's cellphone. Also, through the filter team, Pinate received filtered and unfiltered images of his cellphone and a filtered image of Vasquez's cellphone and laptop.

Shortly after receiving the first discovery production, Pinate's counsel requested additional information falling into six categories: (1) the identities of unindicted co-conspirators, (2) identifying information about offshore corporate entities and bank accounts, (3) the name and account number associated with the intermediary bank referenced in the indictment, (4) the specific "official acts" performed in "obtaining and retaining business" for "any entities and individuals," and the timing of those official acts (5) the specific monetary transactions underlying Count 3, including the dates and amounts of those transactions, and (6) the Philippine statutes alleged as "specified unlawful activity" in Counts 3-6. ECF No. 53-1.

On September 16, 2024, the government provided defense counsel a letter containing a detailed outline of the contents of the first discovery production to streamline the review of the materials and offered to discuss the production by phone or email.

The next day, the government sent a detailed letter responding to the defendants' request for particulars, noting that the indictment is more than sufficiently specific to allow the defendants to prepare for trial, but nevertheless providing fulsome responses to each of Mr. Pinate's six requests.

ECF No. 53-2.  In response to Requests 1 and 2 relating to the identities of unindicted "co-conspirators" and "others," as well as offshore entities and accounts referenced in the indictment, the government provided a table revealing the true identities of all persons and entities listed in the indictment, including nine companies, three individuals, and one bank account.  The government further provided a non-exhaustive list of unindicted "co-conspirators" and "others" relating to the two conspiracy counts, despite no obligation to do so.[1]  As a result of these efforts, the defendants are not seeking any additional information involving Requests 1 and 2.

In response to Request 3 for the identity of the intermediary bank and associated account information, the government provided the bank and location, and further noted that the wire transfers referenced in four paragraphs of the indictment were routed through that bank.  The defendants are not seeking additional information regarding Request 3.

The defendants' Request 4 created a false sense of uncertainty about the allegations and injected inapplicable precedents addressing bribery statutes not charged in this case.  But in sum, Request 4 calls for specific "official acts" and the business nexus of those acts.  In response to the defendants' letter, the government noted that the speaking indictment contains sufficient detail to provide this information and allow the defendants to prepare for trial.

In response to Request 5 calling for specific monetary transactions (and the timing of those payments) underlying the money laundering conspiracy charge (Count 3), the government noted that the indictment was sufficiently detailed to provide this information and allow the defendants to prepare for trial.  Contrary to the defendants' claim that the government provided "the same reply" it gave in response to Request 4, the government further noted that additional detail about the financial

---

[1] *See United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981) (holding that the defendant was

transactions was included in Counts 1 and 4-6.  The government has also referred the defendants to the complaint filed in this case, which as noted above, contains an extraordinary level of detail about the monetary transactions underlying the charged money laundering conspiracy.

With respect to Request 6 calling for the specific Philippine laws involved in Counts 3-6, the government provided three Philippine laws constituting specified unlawful activity.  The defendants do not seek additional information relating to this request.  The government invited the defendants to call or email with any questions.  The government and defense counsel held several telephone conferences to discuss discovery and related topics on September 4, 2024, September 17, 2024, and October 1, 2024, in addition to communications between defense counsel and the filter team.

On September 19, 2024, the government provided the defendants a second discovery response (ECF No. 45).  The government emailed defense counsel a detailed itemization of the second discovery production that included early production of Jencks material and Reports of Investigation (ROI) of interviews of Vasquez, where he (as noted above) described the over-invoicing scheme and use of fake contracts and loan documents, among other topics.

On October 8, 2024, the government shared the third discovery production, along with a detailed itemization of its contents that included (i) HSI chain of custody receipts for seized property and evidence; (ii) Customs and Border Protection (CBP) records, including reports of encounters and inspections of Pinate and a secondary inspection of Vasquez; (iii) 532 pages of WhatsApp communications involving Pinate, Vasquez, Vendor A-Executive, and an unindicted co-conspirator, including conversations between the defendants that the government may use at trial; (iv) business record certifications; (v) supplemental MLAT returns, including COMELEC contracts, payment

---

not prejudiced where the government declined to identify unindicted co-conspirators).

information to Company 1, bank records of wire transfers in Bautista's bank account and other related accounts in the Philippines, (vi) 23 search warrant applications with accompanying affidavits, and (vii) five tolling orders and associated applications with detailed information about the government's investigation.

## LEGAL STANDARD

"The court may direct the government to file a bill of particulars," Fed. R. Crim. P. 7(f), but that decision "rests within the sound discretion of the trial court." *United States v. Draine*, 811 F.2d 1419, 1421 (11th Cir. 1987). There are three proper purposes of a bill of particulars: (1) to inform the defendant of the charges against him with sufficient precision to allow him to prepare his defense, (2) to minimize surprise at trial, and (3) to enable him to plead double jeopardy in a later prosecution for the same offense. *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986). Denial of such a motion "can be reversed only when it is established that the defendant was actually surprised at trial and thus incurred prejudice to his substantial rights." *Draine*, 811 F.2d at 1421.

Courts should only order particulars "to supplement an inadequate indictment." *United States v. Velez*, No. 05-cr-20770, 2008 WL 11454752, at *2 (S.D. Fla. July 11, 2008). "[A] bill of particulars is not required" where "the indictment is sufficiently specific, or if the requested information is available in some other form," *United States v. Butler*, 822 F.2d 1191, 1193 (11th Cir. 1987), including where, as here, "the information sought has already been provided by other sources, such as the indictment and discovery." *United States v. Roberts*, 174 F. App'x 475, 477 (11th Cir. 2006) (citing *United States v. Martell*, 906 F.2d 555, 558 (11th Cir. 1990)).

A bill of particulars is not "designed to compel the government to detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial." *United States v.*

*Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980).[2] Nor can a defendant use a bill of particulars as a pre-trial discovery device or investigative tool. *See Colson*, 662 F.2d at 1391 ("[G]eneralized discovery is not a proper purpose in seeking a bill of particulars."); *see United States v. Bellomo*, 263 F. Supp. 2d 561, 580 (E.D.N.Y. 2003) ("A bill of particulars is not designed to: obtain the government's evidence; restrict the government's evidence prior to trial; assist the defendant's investigation; obtain the precise way in which the government intends to prove its case; interpret its evidence for the defendant, or disclose its legal theory.").

**ARGUMENT**

**THE INDICTMENT IS WELL-PLED AND SUFFICIENTLY APPRISES THE DEFENDANTS OF THE CHARGES AGAINST THEM.**

**A.      Specific "official acts" and business nexus.**

The defendants argue that "the government should be required to specifically identify *all decisions and payments* that it contends constitute improper official acts by Mr. Bautista." Mot. 8 (emphasis in original). This request appears to relate to the FCPA conspiracy charge (Count 1) and the substantive FCPA charge (Count 2). And the actual charges matter. *See United States v. Meregildo*, No. 11-CR-576, 2012 WL 3834732, at *5 (S.D.N.Y. Aug. 28, 2012) ("The necessity of a bill of particulars depends on the nature of the charged crime.").

Count 1 charges the defendants with *conspiring* to bribe a foreign official, in violation of 18 U.S.C. § 371 and 15 U.S.C. §§ 78dd-2 and 78dd-3. As a threshold matter, "a conspiracy indictment need not allege every overt act taken in furtherance of the conspiracy." *United States v. Stoll*, No. 10-cr-60194, 2010 WL 5313486, *7 (S.D. Fla. Nov 23, 2010) (citing *United States v. Elliott*, 571

---

[2] Opinions issued by the former Fifth Circuit prior to October 1, 1981 are binding precedent in our Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

8

F.2d 880, 911 (5th Cir. 1978) (noting that the government is not limited to overt acts pled in the indictment in proving a conspiracy and may show other acts of conspirators occurring during the conspiracy)). *See also United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir. 1986) ("A bill of particulars may not be used to compel the government to provide the essential facts regarding the existence and formation of a conspiracy. Nor is the government required to provide the defendant with all overt acts that might be proven at trial.").

Nevertheless, the indictment alleges 37 overt acts and further specifies that an object of the conspiracy involving Pinate, Vasquez, and their co-conspirators was "to offer, promise to pay, and pay bribes to Juan Andres Donato Bautista, a Philippine government official, in order to obtain and retain contracts with, and receive payment – including releases of value added tax ('VAT') payments – from COMELEC, for and with, and direct business to" Company 1, Company 1 subsidiary, Company 2, Company 3, Vendor A, and others," all of whom have been identified for the defendants. Ind. at 8-9, 11-19.

The defendants have been provided with significantly more specificity than is required at this stage, and they identify no authority suggesting otherwise. They cite *United States v. Bazezew*, 783 F. Supp. 2d 160, 168-69 (D.D.C. 2011) to erroneously suggest that courts require a "description of any overt act taken." Mot. 10. There, the indictment charged 21 individuals with conspiracy under Section 371 and bribery under Section 201 (which is not charged here). Critically, the indictment "allege[d] only a single overt act by" 16 of the 21 defendants over a period of 25 days. *Bazezew*, 783 F. Supp. 2d at 168. The court noted that "while the conspiracy began on September 3, 2009, none of the 16 remaining defendants . . . took an overt act in furtherance of the conspiracy until [at least eight days later]." *Id.* It was this time gap and *single alleged overt act* against 16 defendants

9

that caused the court to require "a description of any overt act taken *by each of the 16 remaining defendants*." *Id.* at 169 (emphasis added).  Here, the indictment specifies 24 overt acts by Pinate between April 2016 and February 2017, 32 overt acts by Vasquez between May 2015 and August 2017, and three overt acts by Bautista between July 2016 and October 2016.

Courts have declined nearly identical requests for specific "official acts" in the context of substantive FCPA charges like Count 2.  In *United States v. Ng*, No. 15-cr-706, 2018 WL 2287101, *1 (S.D.N.Y. May 9, 2018), the defendant sought particulars identifying the alleged official acts of a bribe recipient in a case involving violations of Section 666, the FCPA, and other charges.  The trial court denied the motion and later denied a motion for new trial, noting as a threshold matter that "the Government did not concede that the 'official act' requirement articulated in *McDonnell* . . . applied to [the FCPA]."  *Id.* at *3.  The court further noted that the government need not allege in the indictment "all of the official acts the Government intended to prove at trial."  *Id.* at *11 n.15.

In the absence of applicable authority, the defendants cite cases involving bribery statutes not charged in this case, claiming "[c]ourts routinely order the government to prepare bills of particulars in cases involving bribes," before relegating those authorities to a footnote. Mot. 9 n.2.  The defendants cite an unpublished minute order in *United States v. Carson*, Case No. 8:09-cr-77 (C.D. Cal. May 18, 2009) (ECF No. 75), where an indictment alleged in a single paragraph 236 bribe payments to customers in 30 countries over a nine-year period, leaving the defendants to guess which transactions and events formed the government's bribery case.  The court directed the government to provide the date, amount, and recipient of the unlawful payments—information the defendants have been provided in this case.

*Carson* is instructive to the extent the court looked to the information available to the

defendants through other sources, including discovery.  There, the court found that the "indictment [did] not provide the framework to 'mesh' the discovery with the Indictment," *id.* at 2, while here, the government's charging instruments *do* mesh with the discovery, including bank records laying out each step in the chain of payments from the defendants to the Philippine official.

In *United States v. Lino*, No. 00-cr-632, 2000 WL 8356, at *3-4 (S.D.N.Y. Dec. 29, 2000), the court required a bill of particulars setting forth the bribe recipients and amount of the bribes, where 23 defendants were charged in 26 counts with RICO offenses and four conspiracies, and where the government produced more than 1,200 hours of recorded conversations.  Again, those categories of information are not the subject of the defendants' motion.  The court made special note that, in such a complex case, a defendant may be more likely to be surprised by the identity of an alleged co-conspirator he may have never met.  *Id.* at *13.  The court further noted that voluminous discovery may "necessitate[] a bill of particulars . . . particularly . . . in cases charging criminal offenses under RICO," but that this "might not be necessary in the prosecution of crimes of more limited scope."  *Id.* at *4.  The defendants do not cite any cases applying *Lino* outside of the RICO context and the comparatively limited scope of the conspiracy and small number of defendants in this case do not suggest the potential for undue surprise.

Next, the defendants cite *United States v. Nguyen*, No. 08-cr-522 (E.D. Pa. Dec. 3, 2009) (ECF No. 130), where the court ordered the government to provide identifying information about the recipients of bribe payments—information that is not requested here.  And in *United States v. Murgio*, 209 F. Supp. 3d 698, 723 (S.D.N.Y. 2016), the court granted, in part, a motion for a bill of particulars, requiring the government to identify the dates, locations, and amounts of any bribes in a case not involving FCPA charges.  The court required only that, if the government planned to

"introduce evidence that [defendant] directly paid bribes" rather than relying "primarily on an aider-and-abettor theory," the government must "identify the dates, locations, and amounts of any bribes" that the defendant paid.  That information has been provided here.

Having cited no authority requiring the government to specify "official acts," the defendants resort to inapplicable legal arguments based on case law interpreting the elements of bribery statutes not charged in this case.  In particular, the defendants make arguments about the definition of "official act" based on *McDonnell v. United States*, 136 S. Ct. 2355 (2016) and the reach of gratuities in the federal program bribery statute under *Snyder v. United States*, 144 S. Ct. 1947 (2024).  These arguments are entirely without merit.

*McDonnell* involved honest services fraud and Hobbs Act extortion, with jury instructions borrowed from the definition of "official act" in the general bribery statute, 18 U.S.C. § 201.  None of those statutes is charged here.  Courts have not extended *McDonnell* beyond the contexts of honest services fraud and Section 201, much less found an FCPA charge somehow infirm for not complying with *McDonnell's* "official act" requirements.

While Section 201 bribery limits "official acts" to pending "questions, matters, causes suits, proceedings, or controversies," "not all federal bribery statutes identify 'official act,' much less official act as defined in § 201(a)(3), as the necessary quo for bribery."  *United States v. Seng*, 934 F.3d 110, 132 (2d Cir. 2019).[3]  As the Second Circuit held:

---

[3] Unlike Section 201, the FCPA criminalizes giving a foreign official anything of value (the quid) for purposes of (1) "influencing any act or decision of such foreign official in his official capacity"; (2) "inducing such foreign official to do or omit to do any act in violation of [his] lawful duty . . .," (3) "securing any improper advantage," or (4) "inducing such foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality" (the quos).  15 U.S.C. §§ 78dd-2(a)(1), 78dd-3(a)(1).  Each of these "quos" must assist the giver in "obtaining," "retaining," or "directing" business.

> While the first FCPA quo referencing an "act or decision" of a "foreign official in his official capacity" might be understood as an official act, the FCPA does not cabin "official capacity" acts or decisions to a definitional list akin to that for official acts in § 201(a)(3) . . . [T]he FCPA prohibits bribing a foreign official to "secur[e] an improper advantage" in obtaining, retaining, or directing business, without requiring that the advantage be secured by an official act as limited by the § 201(a)(3) definition.

*Id.* at 134. *See United States v. Reed*, 908 F.3d 102, 111, 113 (5th Cir. 2018) (declining to apply *McDonnell* to a wire fraud conviction because the "troublesome concept of an 'official act'" was not an element of that crime, and further observing a reluctance by "fellow circuits" to extend *McDonnell* outside of honest services fraud and the [general] bribery statute"); *see United States v. Heon-Cheol Chi*, 936 F.3d 888, 896-97 (9th Cir. 2019) (noting that "bribery of a public official"—a specified unlawful activity for money laundering—does not require the elements of Section 201).

Recently, courts have declined nearly identical attempts to litigate through a bill of particulars the applicability of *McDonnell* outside of Section 201. In *United States v. Burke*, No. 19-cr-322, 2022 WL 1970189, at *77 (N.D. Ill. June 6, 2022), a case involving Section 666 and racketeering charges, the defendant moved for a bill of particulars directing the government to "[s]pecifically identify any and all 'official acts' that [the defendant] allegedly committed." In denying the request, the court noted that the indictment identified the steps the defendant took in his capacity as the Chairman of the Committee on Finance, just as the indictment does here. *Id.* at *81. The court rejected the defendant's argument that the conduct fell short of the "official act" requirement in *McDonnell*: "[T]he Court has already noted, these questions are beside the point at the moment—the Government need not inform [the defendant] how it intends to prove the allegations against him." *Id.* The court further summarized authority concluding that "the *McDonnell* 'official act' standard . . . does not necessarily delimit the quo components of other bribery statutes, such as § 666 and the FCPA." *Id.* at *19.

In addition to *McDonnell*-related arguments in the inapposite contexts of honest services fraud and Section 201, the defendants similarly attempt to muddy the pleading requirements of the FCPA by introducing inapplicable precedent about the federal program bribery statute (Section 666) and whether it extends to gratuities.  The defendants suggest that the FCPA-related charges are improper because "only two" overt acts occurred before the final elections contract was awarded, Mot. 11-12, ignoring that the indictment alleges other overt acts before the receipt of payments and VAT-related benefits and that the FCPA reaches payments made after a payor receives a benefit. *See* Report and Recommendation of United States Magistrate Judge Lisette M. Reid in *United States v. Wakil*, No. 21-cr-20406, 2023 WL 2898510, at *5 (S.D. Fla. 2023) (ECF No. 94), report and recommendation adopted by United States District Judge Kathleen M. Williams (ECF No. 100) (the defendant "fails to cite to a single case stating that where payment of a bribe is made after a payor had received the benefit of any bargain struck, no violation of the FCPA occurs").

The defendants cite *United States v. Mitziga*, where the court required "the government to provide, by way of a bill of particulars, disclosure regarding whether it intends to attempt to establish one or both defendants' guilt based on payment of a gratuity for actions that a public official had already taken or committed to take without a quid pro quo agreement to take those actions."  No. 23-cr-242, 2024 WL 383670, at *5 (N.D. Ill. Feb. 1, 2024).  While that ruling may have been appropriate in a case involving Section 666, which is not charged here, because the Supreme Court had recently granted cert in *Snyder*, it is inapplicable here.  *See id.* ("Advance disclosure of this information is important . . . because the answer may bear on whether the trial of the case should await a decision by the Supreme Court in *Snyder*.").  *Synder* did not address the FCPA, has not been extended to the FCPA, and certainly did not alter the particularity required for FCPA charges.

As discussed in detail above, the indictment properly specifies a "business nexus," alleging that it was part of the conspiracy for Pinate, Vasquez, and their co-conspirators "to offer, promise to pay, and pay bribes" to Bautista "in order to obtain and retain contracts with, and receive payment—including releases of value added tax ('VAT') payments—from COMELEC . . . and direct business to" the individuals and entities described in the indictment.  Ind. at 8-9.  The defendants seem to argue that continued receipt of payments and tax benefits do not constitute a "business nexus."  That argument—citing *United States v. Kay*, 359 F.3d 738 (5th Cir. 2004), where the Fifth Circuit found a wide variety of unfair business advantages (including tax diminution) a proper business nexus for the purposes of the FCPA—is without merit at any stage, and certainly has no place in a motion for a bill of particulars.  *See United States v. Kozeny*, 493 F. Supp. 2d 693, 713 (S.D.N.Y. 2007) (finding that an indictment adequately charged an FCPA offense in light of "the broad construction that Congress intended courts to apply to the business nexus element").

The remaining request involving the business nexus element—specifically, "how the alleged corrupt acts were intended to obtain payments, including VAT"—is a request not for particulars, but legal theories.  The word "*how*" in the first paragraph of the instant motion is a telltale sign that the defendants are improperly using a bill of particulars "to secure for the defense the government's explanation of its theory of the case" and an *interpretation* of the evidence.  *Velez*, 2008 WL 11454752, at *2 (citing *United States v. Carter*, No. CR 305-12, 2007 EL 1430308, at *6 (S.D. Ga. May 10, 2007)).

### B.     Transactions underlying the money laundering conspiracy.

The defendants further request that the government identify "the specific monetary transactions that underlie the alleged money laundering conspiracy" (Count 3).  Mot. 13.  As

discussed above, the government need not allege every overt act taken in furtherance of a conspiracy charge. *See Stoll*, 2010 WL 5313486, at *7. Nor is the government limited in proving a conspiracy to overt acts pled in the indictment. *See Elliott*, 571 F.2d at 911. Nonetheless, the government pointed the defendants to the transactions detailed in Counts 1 and 4-6 of the indictment. The defendants have not cited, and the government is not aware of, any case granting a request for such particulars.[4]

In fact, courts have made clear that this type of request is not the proper subject of a bill of particulars. *See United States v. Sterritt*, 678 F. Supp. 3d 317, 330 (E.D.N.Y. 2023) (finding moot and declining to address a request for "the specific transactions underlying the money laundering offense which the Government plans to offer as proof of the money laundering charge" in light of the 35-page speaking indictment and voluminous discovery); *see United States v. Shackelford*, No. 21-cr-454, 2023 WL 11898581, at *4, *6 (N.D. Ga. Nov. 17, 2023) (government need not identify "precise payments and official acts" because a "bill of particulars is not a substitute for discovery" and "the indictment and discovery fleshes out the details of the government's case and therefore equips [defendants] with information they need to mount a defense") (internal quotations omitted).

Here, the money laundering charges track the language of the statutes and provide details about the specific financial transaction charged, including the dates, amounts, and general nature of the transactions that the defendants conducted. In addition to the 24-page speaking indictment, the

---

[4] None of the cases cited by the defense involve financial transactions underlying a conspiracy charge. *See United States v. Davidoff*, 845 F.2d 1151, 1155 (2d Cir. 1988) (the government should have provided "the identity of victims of the offenses that the prosecution intends to prove"); *see United States v. Bortnovsky*, 820 F.2d 572, 757 (2d Cir. 1987) (finding the trial court should have ordered the government to particularize "the dates of allegedly staged burglaries or the identification of documents purportedly falsified"); *see United States v. Vasquez-Ruiz*, 136 F.Supp.2d 941, 944 (N.D. Ill. 2001) (requiring specifics about victims and falsified medical tests).

government has provided the defendants voluminous discovery, including documents pertaining to the specific transactions alleged in Counts 1 and 4-6.  As noted, the government also itemized these discovery productions to aid in the defendants' review of this material.  The defendants seem to acknowledge that the government has provided information associated with the transactions and that the discovery in this case is "staggering."   In recognition of the voluminous discovery, the government has responded in writing to defense inquiries and made itself available to field discovery-related inquiries on several occasions.  To the extent the defendants need "additional time to review these items, the proper vehicle is to file a motion for a continuance as opposed to [a motion for a bill of particulars]."  *See United States v. Palacio*, 21-cr-20301, 2021 WL 4066894, at \*1 (S.D. Fla. Sept. 7, 2021).

## CONCLUSION

The defendants' request for a bill of particulars is an improper attempt to have the government make a detailed disclosure of its trial evidence and is not an appropriate basis for particulars.  The defendants, through the charging documents and discovery, have been informed of the charges against them with sufficient precision to allow them to prepare a defense, to minimize surprise at trial, and to enable them to plead double jeopardy in the event of a later prosecution for the same offense.  The Court should deny the motion.

Respectfully submitted,

GLENN S. LEON                                    MARKENZY LAPOINTE
Chief                                                      United States Attorney

*/s/ Alexander J. Kramer*                          */s/ Robert J. Emery*
_____          _____
ALEXANDER J. KRAMER                       ROBERT J. EMERY
MICHAEL C. DILORENZO                      Assistant U.S. Attorney
CONNOR MULLIN                                Southern District of Florida

17

Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue NW
Washington, DC 20530
Tel: (202) 307-0955
Alexander.Kramer@usdoj.gov

Court ID No. A5501892
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9421
Robert.Emery2@usdoj.gov

18