UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-20343-KMW

UNITED STATES OF AMERICA

vs.

ROGER ALEJANDRO PIÑATE MARTINEZ, and
JORGE MIGUEL VASQUEZ,

        **Defendants.**
_____/

### UNITED STATES' SUPPLEMENTAL FILING RELATING TO REQUESTS FOR RULE 15 DEPOSITIONS

The United States of America, by and through undersigned counsel, pursuant to the Courts's Order of March 4, 2025, hereby supplements arguments made in its Unopposed Motion for Rule 15 Depositions ("Rule 15 Motion") (DE 101), in its Omnibus Response to the Defendants' Filings with Respect to Rule 15 Depositions ("Omnibus Response") (DE 107), and at the March 4, 2025 hearing.[1]

    A. Background

Defendant Vasquez was an executive for Company 2, in Boca Raton, Florida, managing hardware development and manufacturing worldwide for its parent company, Company 1.[2] He served as Company 1's representative with Vendor A, a Taiwan-based manufacturer of electronic products. Vasquez was the head of Company 1's operations in Taiwan. Vendor A

---

[1] The government incorporates by reference all factual assertions, legal authorities and arguments set forth in its Rule 15 Motion and its Omnibus Response — including the proposed manner in which the depositions are to be conducted, to ensure the defendants' meaningful participation.

[2] For purposes of this filing, Company 1 and its subsidiaries will collectively be referred to as "Company 1."

and Company 1 formed a joint venture that was awarded lucrative contracts to supply voting machines to the Philippines for the country's 2016 elections.

Defendant Vasquez and his co-conspirators created slush funds with Vendor A by over-invoicing the cost of voting machines for the 2016 Philippine elections. The slush funds — which were maintained by Vendor A-Executive at the direction of defendant Vasquez and his co-conspirators — were used to, among other things, pay bribes to co-conspirator/then-Philippine government official Juan Andres Donato Bautista.[3] Specifically, defendant Vasquez and his co-conspirators caused and directed transfers of money from the slush funds through shell companies and off-shore bank accounts to specified designees, including co-conspirator Bautista.

Defendant Vasquez and his co-conspirators took several steps to disguise the nature and purpose of the slush funds and payments made from these funds, including the use of personal email accounts and encrypted messaging on WhatsApp, the use of coded language to describe and the slush funds accounts, and the creation of fraudulent contracts and sham loan agreements to make transfers from the slush funds accounts appear legitimate.

In approximately November 2015, Vendor A-Executive assumed control over Vendor A, after the unexpected death of his father. During the relevant period, Vendor A-Executive worked with and/or supervised Witnesses 1, 2, and 3 (the government's Taiwan-based deponents). Throughout the charged conspiracy, defendant Vasquez communicated directly with Vendor A-Executive using personal or non-business emails accounts on matters relating to the slush funds. These communications included, but were not limited to: (1) defendant Vasquez directing Vendor A-Executive to make wire transfers from the slush funds, dictating the amount, recipient,

---

[3] Co-conspirator Bautista served as the Chairman for the Commission on Elections (COMELEC) for the Republic of the Philippines, from approximately April 28, 2015, through October 2017.

and manner of the payment (typically through Vendor A-controlled shell companies and often supported by fraudulent contracts or sham loan agreements generated by defendant Vasquez and/or his co-conspirators); (2) confirmation that such transfers were sent or received; and (3) discussions concerning accounting of the slush funds. These communications often had attachments, such as, bank or wire transfer records showing that a payment was sent or received, spreadsheets accounting for the slush funds, and other supporting documentation (including the fraudulent contracts and loan agreements).

Vendor A-Executive also communicated using his personal email account with Witness 1 regarding slush fund accounting, and with Witness 2 regarding slush fund payments. These communications similarly included relevant attachments.

### B. Defendant Vasquez's Obstruction of Justice

On October 21, 2019, agents from the Department of Homeland Security's Homeland Security Investigations ("HSI") met defendant Vasquez at Miami International Airport and notified him that he was a target of a federal investigation. Defendant Vasquez subsequently retained counsel and agreed to speak with the government on October 30, 2019. Prior to speaking with the government, and while represented by current counsel, defendant Vasquez signed a proffer agreement, generally referred to as a Kastigar letter, acknowledging that he understood its content and agreeing to its terms, including that he was not to deliberately withhold information or commit any violation of law after signing. Defendant Vasquez proceeded to speak with the government.

Within a manner of weeks, defendant Vasquez disregarded terms of his agreement with the United States. Travel records show that in November and December 2019, defendant

Vasquez traveled twice to Taiwan.[4] During these trips, he met with Vendor A-Executive in Taiwan and informed him that the U.S. authorities were investigating Vasquez for payments relating to the slush funds. Defendant Vasquez instructed Vendor A-Executive to delete emails and files related to these payments. Vendor A-Executive followed Vasquez's instruction and deleted emails and files related to these payments. The deleted evidence no longer exists in Vendor A-Executive's accounts.

The government confirmed the existence of the emails and files described above through search warrants of email accounts used to communicate with Vendor A-Executive (including email accounts of Witnesses 1, 2 and 3) as well as through a search warrant of defendant Vasquez's devices. The government further corroborated the deletion of these emails through an interview of Vendor A-Executive as well as through a search warrant of Vendor A-Executive's personal email account. The deleted emails included evidence critical to the government's case, including evidence of payments made to co-conspirator Bautista through his shell company, Baumann Enterprises Limited.

Upon defendant Vasquez's return to the United States, he continued his façade of cooperating with the government. He debriefed with the government again on multiple occasions, and each time agreeing to be bound by the terms of his agreement with the government. At no time, even though obligated under the Kastigar agreement to be entirely truthful, did defendant Vasquez admit or disclose his role in the destruction of evidence.

### C. Risk of Additional Obstruction and/or Intimidation

The opportunity for further attempted obstruction and/or witness intimidation or tampering is simply too great to allow defendant Vasquez to appear in person for the foreign

---

[4] Defendant Vasquez's travel was confirmed through HSI.

depositions.  Though the government is not seeking to depose Vendor A-Executive, Witnesses 1, 2, and 3 all have close relationships with Vendor A-Executive. Witness 2 is Vendor A-Executive's mother. She was not technically Vendor A-Executive's employee, but she was closely associated with the business and controlled the accounts from which slush fund payments were made, including effectuating transfers. Witness 1 and Witness 3 are both long-standing employees of Vendor A-Executive, the former serving as his accountant and the latter serving as his chief sales representative. Vendor A-Executive communicated with Witnesses 1 and 2 on slush funds-related matters; and with Witness 3 on Company 1-related matters.

Defendant Vasquez remained in contact with Vendor A-Executive through at least mid-2024, often discussing financial matters in an ongoing attempt to influence Vendor A-Executive. For example, Vendor A was owed money by Company 1 and defendant Vasquez repeatedly told Vendor A-Executive he could help facilitate payment.  Additionally, Vendor A-Executive held approximately $1.8 million, which represented kickback payments for defendant Vasquez from remaining portions of the slush funds.  Defendant Vasquez received payments and repeatedly sought payment from Vendor A-Executive seeking transfer of these funds to accounts under defendant Vasquez's control.[5]

## CONCLUSION

Defendant Vasquez obstructed justice by causing the destruction of evidence in Taiwan while purporting to cooperate with the government.  There is no reason to believe that defendant Vasquez would abide by a court order regarding witnesses or otherwise while outside the United States, and especially while in Taiwan.  Based on the foregoing, the United States respectfully

---

[5] These funds were forfeited to the government by Vendor A-Executive in late 2024.

requests that the foreign depositions be taken without the physical presence of defendant Vasquez.

|  |  |
|---|---|
|  | Respectfully submitted, |
| LORINDA I. LARYEA<br>Acting Chief, Fraud Section | HAYDEN P. O'BYRNE<br>United States Attorney |
| */s/ Michael C. DiLorenzo* | */s/ Robert J. Emery* |
| MICHAEL C. DILORENZO (A5503232)<br>CONNOR MULLIN (A5503233)<br>JIL SIMON (A5502756) | ROBERT J. EMERY (A5501892)<br>Assistant U.S. Attorney<br>Southern District of Florida |
| Criminal Division<br>U.S. Department of Justice<br>1400 New York Avenue<br>Washington, DC 20530<br>Tel: (202) 549-3978<br>Michael.DiLorenzo2@usdoj.gov | U.S. Attorney's Office<br>99 Northeast 4th Street<br>Miami, Florida 33132-2111<br>Tel: (305) 961-9421<br>Robert.Emery2@usdoj.gov |

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a true and correct copy of the foregoing was file with the Clerk of the Court using CM/ECF on March 7, 2025.

                                            */s/ Michael C. DiLorenzo*
                                            Michael C. DiLorenzo
                                            Trial Attorney