UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-20343-KMW/Goodman

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

JORGE MIGUEL VASQUEZ,

      Defendant.

_____/

## DEFENDANT JORGE VASQUEZ'S MOTION TO SUPPRESS

The Fourth Amendment requires the government to obtain a search warrant if it wants to search and seize an individual's personal electronic devices. In April 2019, the government seized Mr. Vasquez's iPhone and computer at San Francisco International Airport (SFO). It did not have probable cause or a warrant, and it denied Mr. Vasquez's request to return his devices. Instead, it relied solely on the "border search" exception to the Fourth Amendment. The government then held these devices for almost three years, searching them without a warrant, before finally obtaining a warrant in December 2021.

This violates the Fourth Amendment. First, the border search exception does not allow for general, unlimited searches of a device seized at a border stop from a U.S. citizen such as Mr. Vasquez. This is especially true in California, where the devices were seized. Second, the border search doctrine does not allow for the unlimited and endless seizure of personal property that does not contain contraband,

1

such as narcotics or child pornography. And third, and perhaps most significantly, the Eleventh Circuit and other courts have emphasized that law enforcement cannot unreasonably delay getting a search warrant – even if the initial seizure was lawful.

The government's handling of Mr. Vasquez's devices has been consistently inconsistent with the Fourth Amendment. Accordingly, this Court should suppress any documents or items obtained from Mr. Vasquez's devices.

## FACTUAL BACKGROUND

On April 5, 2019, Mr. Vasquez landed at SFO as an intermediate stop on his way home to Florida. At the immigration checkpoint, Customs and Border Protection (CBP) agents briefly detained Mr. Vasquez. While CBP eventually let Mr. Vasquez enter the country, Homeland Security Investigations (HSI) agent Jason Ko seized his personal iPhone and laptop computer. Mr. Vasquez asked Special Agent Ko for his devices to be returned. Special Agent Ko refused and stated that the devices were being seized as evidence in a criminal investigation.

In 2019, 2020, and 2021, Mr. Vasquez met with the government on multiple occasions. Mr. Vasquez was represented by undersigned counsel in this matter. Although Mr. Vasquez was cooperating with the government, the government never sought Mr. Vasquez's affirmative consent to search the devices it had seized.

On December 8, 2021, after Mr. Vasquez's final meeting with the government, HSI SA Colberd Almeida swore out a warrant for Mr. Vasquez's devices, which had, by this time, been moved to the Southern District of Florida. On December 23, 2021, HSI obtained a second warrant for the iPhone, because it had failed to execute the

2

original warrant within the 14-day period provided by the Magistrate Judge. SA Almeida's affidavits are based on evidence obtained during searches of Mr. Vasquez's devices prior to the government's application for a search warrant.

The government subsequently used the fruits of the December 2021 warrant to obtain other evidence, and documents obtained from Mr. Vasquez's devices are cited extensively in the Indictment and expected to be used at trial against Mr. Vasquez.

## LEGAL STANDARD

"The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *United States v. Davis,* 109 F.4th 1320, 1327 (11th Cir. 2024) (quoting U.S. Const. amend. IV). The Fourth Amendment applies to anything in which an individual has a "reasonable expectation of privacy." *Id.* at 1320. "Under the exclusionary rule, evidence obtained [] in violation of the Fourth Amendment," as well as indirectly obtained "fruit of the poisonous tree," cannot be used against a criminal defendant. *United States v. Perkins,* 348 F.3d 965, 969 (11th Cir. 2003); *see also Wong Sun v. United States,* 371 U.S. 471, 488 (1963).

To prevail on a motion to suppress, the defendant has the burden of showing that the search was unlawful, and that he had a legitimate expectation of privacy. *United States v. McKennon,* 814 F.2d 1539, 1542 (11th Cir. 1987).

3

## **ARGUMENT**

**I.    This Court should apply Ninth Circuit law in evaluating the propriety of the applicability of the "border search" exception.**

In his December 2021 search warrant affidavit (attached as Exhibit A), SA Almeida repeatedly cited "HSI's border search authority" as the basis for the pre-warrant search and seizure of Mr. Vasquez's devices. *See, e.g.,* ¶ 3. But the government's ability to search devices at the border is limited to the border, and it is not universal in scope or duration.

The Ninth Circuit has a significantly more restrictive view of the "border search exception" to the Fourth Amendment than the Eleventh Circuit. In *United States v. Cano*, 934 F.3d 1002 (9th Cir. 2019), the court reaffirmed existing precedent that "the border search exception is a narrow exception" that is limited to specific purposes. *Id.* at 1013 (internal citations omitted). And that exception, in the Ninth Circuit, does not permit either forensic searches or searches that go beyond a search for contraband. *Id.* at 1018 ("[W]e hold that the border search exception authorizes warrantless searches of a cell phone only to determine whether the phone contains contraband. A broader search cannot be justified by the particular purposes served by the exception.") (internal citations omitted). Thus, while a broad search of Mr.

4

Vasquez's devices may have been permissible had he entered the country in Miami, it was not permitted in San Francisco.[1]

In evaluating legal issues that involve this type of inter-Circuit tension, courts generally defer to the *lex loci* – *i.e.*, where the search or seizure occurred. This is sensible in the criminal context, because the purpose of the Fourth Amendment's exclusionary rule is to deter improper conduct where it happens.

For example, a district court in the Tenth Circuit recently applied Ninth Circuit law in the context of the Fourth Amendment. *See United States v. Haack*, 2024 WL 2747351 (D.N.M. 2024). In *Haack*, the court noted that "numerous district courts have held that the propriety of law enforcement's conduct should be determined by the law of the circuit in which their conduct occurred." *Id.* at 4 (collecting cases). "To effectuate the exclusionary rule's primary purpose of deterring police misconduct, logic requires that officers' conduct be consistently held to the law as applied within their own circuits." *Id.* (internal citation omitted).

Indeed, while this issue arises infrequently, "the few federal cases that have addressed a similar choice-of-law issue in the criminal context have adopted a lex loci approach." *United Sates v. Ozuna*, 129 F. Supp. 2d 1345, 1354 (S.D. Fla. 2001), *aff'd*, 48 F. App'x 739 (11th Cir. 2012). Then-District Judge Jordan, writing in relation to

---

[1] Curiously, SA Almeida omitted all details of the border search – including its location – in his search warrant affidavit. Nowhere in the affidavit are the words "California," "San Francisco," or "SFO" to be found. And SA Almeida did not provide any information about the circumstances of the border search, nor did he explain that the "border search" continued for years afterward, thousands of miles away from the border where Mr. Vasquez was stopped.

a Rule 404(b) suppression issue, stated that "this approach is persuasive," citing both case law and treatises which support that position.

A mirror situation involving the same Main Justice section bringing this case is instructive. In *United States v. Ayvazyan et al.*, 2:20-cr-00579-SVW (C.D. Cal.), customs agents seized devices at Miami International Airport for a case investigated and prosecuted in Los Angeles. The government, in responding to a motion to suppress, urged the district court to apply Eleventh Circuit law, invoking the principle of *lex loci*. (Dkt. No. 152.) The district court agreed. (Dkt. No. 296 at 3, 8-14.) Noting that the border search would have been illegal under Ninth Circuit law, the district court nevertheless denied the defendants' motion to suppress because Eleventh Circuit law would have permitted it.

This Court should hold the government to a consistent position. Because the law enforcement conduct in question took place in California, this Court should apply Ninth Circuit law, not Eleventh Circuit law, in evaluating the legality of the initial search here.

## II.   __The original border search was impermissible under the Fourth Amendment.__

As a threshold matter, Mr. Vasquez clearly had a reasonable expectation of privacy in these devices: they were his. The Supreme Court has noted that cell phones "place vast quantities of personal information literally in the hands of individuals." *Riley v. California*, 573 U.S. 373, 386 (2014). The same is true for personal computers. And because Mr. Vasquez was not under arrest, *id.*, and the devices did not contain contraband that was *per se* illegal to possess, Mr. Vasquez's

6

expectation of privacy in his devices was significant. That expectation commands one result: that under *Cano*, an intrusive and extensive search and seizure of Mr. Vasquez's devices was impermissible.

An individual's "expectation of privacy [is] less at the border than in the interior," to be sure. *United States v. Montoya de Hernandez*, 473 U.S. 531, 540 (1985).

In *Cano*, CBP arrested a defendant at the border for transporting narcotics in his vehicle. CBP seized Cano's cell phone and conducted an advanced search, which revealed information that was ultimately used against him. 934 F.3d at 1008-09. The government's position was not that *all* device searches at the border are permissible, but instead that those "tethered to the purpose of the border search exception—namely, interdicting foreign contraband" would be allowed under the Fourth Amendment. *Id.* at 1016-17.

The Ninth Circuit rejected even the government's limited expansion of the border search exception, finding that "cell phone searches at the border, whether manual or forensic, must be limited in scope to a search for digital contraband." *Id.* at 1007.  Finding that "the strongest historic rationale" for the border search exception is preventing the importation of contraband, the court ruled that "the border search exception authorizes warrantless searches of a cell phone only to determine whether the phone contains contraband." *Id.* at 1018.  And, as SA Ko said at SFO, the purpose of the seizure was to find evidence, not interdict contraband.

The search here thus plainly runs afoul of *Cano*, since it went far beyond the scope of a search for digital contraband. SA Almeida's affidavit states that these electronic devices were "searched for evidence, instrumentalities, contraband, and/or fruits of 18 U.S.C. §§ 1956 and 1957 (money laundering)." Aff. ¶ 3. That search – for everything but digital contraband (which is unlikely to exist in a money laundering investigation of this sort) – is not allowed in the Ninth Circuit.

Indeed, the very nature of a multiyear search for evidence undermines the Ninth Circuit's explanation of the border search exception. SA Almeida's "border search" involved extensive review of text messages, account details, and wire transactions. *See, e.g.*, Aff. ¶¶ 33, 34, 46, 50 (citing examples of evidence discovered during the "border search"). One thing is clear from this recitation of facts: the border search did not occur at the border, and it was entirely disconnected from the border search exception's "historic rationale" to interdict contraband.

That *Cano* postdated the seizure of Mr. Vasquez's devices by four months is neither here nor there. *Cano* merely restated existing Ninth Circuit law regarding the border search exception. In *United States v. Cotterman*, 709 F.3d 952 (9th Cir. 2013), the Ninth Circuit stated:

> International travelers certainly expect that their property will be searched at the border. What they do not expect is that, absent some particularized suspicion, agents will mine every last piece of data on their devices or deprive them of their most personal property for days (or perhaps weeks or even months, depending on how long the search takes).

*Id.* at 967. But this is precisely what HSI did here: deprived Mr. Vasquez of his property, biding its time as it accumulated probable cause and applied for a search warrant three thousand miles away.

In *Cano*, the Ninth Circuit recognized that existing Fourth Amendment law precluded the agents' actions. In refusing to apply the good faith exception to the exclusionary rule, the *Cano* court stated that "we fail to see how border officials could believe that" existing appellate precedent authorized a warrantless border search for evidence. 934 F.3d at 1021-22. Because the "officials' search was objectively tied only to proving their case against Cano and finding evidence of future crimes," it was as impermissible pre-*Cano* as it was after the ruling. *Id.* at 1022. Per the Ninth Circuit, "[s]earching for evidence and searching for contraband are not the same thing," *id*, and any official conducting a border search knew or should have known that.

The government's expansive use of the border search exception here was unconstitutional. The search was plainly for evidence, not contraband, and did not occur at the border. Because the Fourth Amendment requires a warrant to conduct a search of this sort, *see Riley*, this Court should suppress any evidence obtained from Mr. Vasquez's devices.

III.   The 32-month seizure of Mr. Vasquez's devices was impermissible under the Fourth Amendment, and the government's unreasonable delay requires suppression.

In the 32 months between April 2019 and December 2021, the government did not obtain a search warrant for Mr. Vasquez's devices for one reason: it did not have probable cause. In 2021, HSI began building its probable cause to search the devices. *See* ¶¶ 36-38 (describing applications for search warrants and orders under 18 U.S.C.

9

§ 2703(d) beginning in late April 2021).  But the government was not entitled to the luxury of slowly developing probable cause for devices it had already held for several years, and it was not entitled to use illegally obtained evidence to bolster its probable cause. *See United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998).

The Eleventh Circuit has found that "even a seizure based on probable cause is unconstitutional if the police act with unreasonable delay in securing a warrant." *United States v. Mitchell*, 565 F.3d 1347, 1350 (11th Cir. 2009).  Courts evaluate the reasonableness of the delay "in light of all the facts and circumstances and on a case-by-case basis." *Id.* at 1351.  In *Mitchell*, the Eleventh Circuit determined that a 21-day delay between a lawful, probable cause-based seizure of a hard drive and application of a search warrant was unreasonable, and vacated a child pornography conviction.

*Mitchell* controls this motion, and it is not a close call.  Even assuming *arguendo* that the seizure conducted at SFO was lawful, there are no circumstances which justify a 32-month delay in obtaining a search warrant here.

In analyzing the reasonableness of a delay before obtaining a search warrant, the Eleventh Circuit has identified four key factors for district courts to consider. First, courts should consider "the significance of the interference with the person's possessory interest"; second, "the duration of the delay"; third, "whether or not the person consented to the seizure"; and fourth, "the government's legitimate interest in holding the property as evidence." *United States v. Laist*, 702 F.3d 608, 613-14 (11th Cir. 2012).

*First*, Mr. Vasquez's possessory interest in these devices was substantial. Mr. Vasquez was the owner of these devices – they were, and are, unquestionably his property. The devices contain personal information: financial records, communications with other individuals, photos of his wife, children, and family, and everything else that a contemporary American stores on his or her devices. For many of us, our iPhones and MacBooks contain multitudes; they are where we store much of the detail of our lives. Mr. Vasquez is no different. It is clear that "such a thorough and detailed search of the most intimate details of one's life is a substantial intrusion upon personal privacy and dignity." *Cotterman*, 709 F.3d at 968. Beyond his personal interest, Mr. Vasquez needed those devices because they contained technical information crucial to the functioning of businesses that he either was employed by or owned himself.

The Eleventh Circuit has recognized the importance of these interests in this context. "Computers are relied upon heavily for personal and business use . . . thus, the detention of the hard drive [] before a warrant was sought constitutes a significant interference with [] possessory interest." *Mitchell*, 565 F.3d at 1351; *Riley*, 575 U.S. at 385 (describing significance of cell phones in modern society). If the interference was considered significant for a three-week delay in a child pornography case, where any possessory interest was mitigated by the lack of a legitimate possessory interest in contraband, it is even more profound here.

*Second*, courts must analyze the duration of the delay. Mr. Vasquez acknowledges that the 21-day delay found unreasonable in *Mitchell* is not a clear

11

dividing line. Indeed, the Eleventh Circuit has blessed slightly longer delays as reasonable. *See Laist* (25-day delay before obtaining warrant was reasonable); *United States v. Sparks*, 806 F.3d 1323 (11th Cir. 2015) (23-day delay was reasonable); *but see United States v. Rubinstein*, 2010 WL 2723186, at *14 (S.D. Fla. 2010) (recommending suppression after a 41-day delay). But the 21-day delay period does provide valuable guidance as to the lengths of delay that courts might countenance as reasonable.

Take the *Laist* court's analysis, for example. There, the Eleventh Circuit noted that "in some contexts, a delay as short as 90 minutes may be unreasonable, while in others, a delay of over three months may be reasonable." 702 F.3d at 614 (citations omitted). In trying to imagine the most extreme example of delay that could be considered reasonable, the panel settled on three months. The delay here is more than ten times that. And indeed, <u>none</u> of the cases that confront this question address multiyear delays, because it is incontrovertible that such a delay offends the Fourth Amendment.

*Third*, the court must look at whether Mr. Vasquez gave consent. This question is easy: he never did. Mr. Vasquez's devices were seized from him at an airport, and when he asked when he would get them back, he was told he would not. In multiple meetings with the government, HSI never asked Mr. Vasquez to consent to a continued seizure or search of his devices, and he never did.

In his affidavit, SA Almeida mentioned that Mr. Vasquez had not asked for the devices to be returned (p.10, nn.1). This is untrue – Mr. Vasquez asked for the devices

to be returned at SFO, and was told they would not be returned to him. And Mr. Vasquez has requested the return of the items again and again, through counsel, since 2019. Indeed, the government has continued, to this day, to refuse to return the items despite repeated requests.

Even so, while courts have determined that failure to ask for the devices to be returned "can be revealing," and can serve as "some evidence (helpful, though not essential)" as to whether Mr. Vasquez's possessory interests were affected, this factor is not dispositive. *Thomas v. United States*, 775 F. App'x 477, 490 (11th Cir. 2019). Because even when an individual fails to request the return of devices – which is not the case here – "the government still must act diligently to obtain a search warrant." *Id.* This is because, in our system, "[g]overnment confiscation of private property is disfavored." *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1068 (9th Cir. 1994).

*Finally*, the government's legitimate interest in holding the property as evidence was minimal. The government first applied for a search warrant in this matter – that is, first told a magistrate it had probable cause to believe that a crime had been committed – in the spring of 2021. For two years, the government's investigation was largely based on speculation, and accordingly, the government had no justification for holding these devices.

Notably, virtually all of the cases that address this issue are cases involving child sexual abuse material (CSAM). In CSAM cases, there are two legitimate, countervailing governmental interests that often justify holding the property in

question. First, the CSAM contained on the devices is itself powerful evidence, since mere *possession* of that material is a federal crime. And second, because CSAM is *per se* illegal to possess, the government has an interest in preventing an individual from possessing CSAM – it cannot reasonably return a device containing CSAM to its owner, any more than it can hand back a parcel of narcotics or an illegal weapon.

Those interests do not apply here. The evidence in question here is not contraband; the items seized from Mr. Vasquez's devices are professional and personal communications and documents. They do not constitute damning evidence on their face; unlike CSAM, they are subject to analysis, explanation, and differing opinions. And the evidence in question is certainly not illegal to possess; nobody has accused Mr. Vasquez of possessing any contraband here.

The *Mitchell* court noted that "no effort was made to obtain a warrant within a reasonable time because law enforcement officers simply believed that there was no rush." 565 F.3d at 1353. Clearly, the government here believed there was even less of a rush – it held Mr. Vasquez's devices, without a warrant, for 978 days – more than forty-six times the period that the Eleventh Circuit found unreasonable. Because there was "no compelling justification" for such a delay, *id.* at 1351, and HSI acted in flagrant violation of the Fourth Amendment, this Court should suppress any evidence obtained from Mr. Vasquez's devices.

IV.   **The affidavit for the search warrant was rooted in tainted evidence**

Finally, this Court should suppress the contents of Mr. Vasquez's iPhone and laptop because the search warrant affidavit's recitation of a probable cause link

14

between the devices and the alleged criminal conduct is based solely on the illegal search of the devices themselves. *See, e.g.*, SW Aff. pp. 10-12.

The Supreme Court has held that a search warrant predicated on illegally obtained evidence is invalid if tainted evidence is "critical to establishing probable cause for the issuance of the warrant." *United States v. Karo*, 468 U.S. 705, 715 (1984). "However, if the search warrant was obtained based upon information from an independent source, then the warrantless entry, even though illegal, would not require exclusion of evidence." *United States v. Glinton*, 154 F.3d 1245, 1254 (11th Cir. 1998).

SA Almeida's affidavit uses evidence from other sources to establish probable cause for the offenses in question, but aside from the fruits of the illegal search, there was no probable cause to search the devices themselves. *See generally United States v. Bishop*, 683 F. App'x 899, 906 (11th Cir. 2017) (noting affidavit "failed to establish a link between the iPhone and any criminal activity"). As a result, the affidavit was deficient. This Court should re-examine the affidavit, absent the fruits of the illegal warrantless search, to determine whether these probable cause findings were sufficient. *United States v. Bergin*, 732 F. Supp. 2d 1235, 1254-55 ("the court redacts tainted evidence and determines if sufficient untainted evidence is present in the affidavfit to establish probable cause.").

## CONCLUSION

For the foregoing reasons, this Court should grant Mr. Vasquez's motion to suppress.

15

Respectfully submitted,

FRANK A.RUBINO, ESQ P.A.
550 Biltmore Way, Suite 780
Coral Gables, FL. 33134
Tel:  305 858 5300

/s/  *Frank A. Rubino*
E-mail:  frank@frankrubino.com