UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 24-20343-CR-WILLIAMS/GOODMAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JORGE MIGUEL VASQUEZ,

    Defendant.
_____/

**ORDER IMPOSING "ONE MORE"**
**BRIEFING ASSIGNMENT FOR SUPPRESSION MOTION**

Lieutenant Frank Columbo was a fictional homicide detective with the Los Angeles Police Department. He was at the heart of *Columbo*, a unique television show which had two pilot episodes in 1968 and 1971. It then aired on NBC from 1971 to 1978 and then on ABC from 1989 to 2003. Starring Peter Falk as the ramshackle, seemingly-bumbling, eccentric, cigar-chomping, rumpled raincoat-wearing detective, the show featured a signature catchphrase: **"just one more thing."**

That iconic comment would be made after Columbo completed an informal interrogation with the murderer, left the scene and then returned a few seconds later, with the opening gambit of "there's just one more thing" (but the omitted, supposedly-forgotten question would typically be critical).

The Undersigned is, of course, well aware that I have instructed the parties to brief myriad issues following the evidentiary hearing. In keeping with the "one more thing" comment from Columbo, the Undersigned is, in this Order, directing the parties to brief "one more thing" in connection with Defendant Jorge Miguel Vasquez's ("Vasquez") suppression motion. [ECF No. 128]. The topic at issue in the "one more thing" assignment is the **good faith doctrine**.

In its opposition to Vasquez's suppression motion, the United States contends that the "Court need not engage in a good faith exception analysis because the limited view of border search authority set forth in *Cano*[1] has been expressly rejected by the Eleventh Circuit, where border searches do not require reasonable suspicion and are not limited to contraband." [ECF No. 143, p. 14]. But Vasquez's suppression motion encompasses more than a challenge to the border search itself (which was done in Miami -- after the two devices were transported by HSI, after they were detained at the San Francisco Airport). Vasquez contends that the United States waited too long to seek a search warrant (in December 2021). A United States Magistrate Judge issued a search warrant on December 8, 2021, and another magistrate judge issued a follow-up search warrant on December 23, 2021 (because the first one had not been served during the 14-day window specified in the first warrant).

The affidavits submitted in support of these two warrants noted, in a chart, that both items were "recovered" from Vasquez on April 5, 2019. They did not mention that the two

---

[1]   *United States v. Cano*, 934 F.3d 1002 (9th Cir. 2019).

items (a cell phone and a laptop computer) were detained (*i.e.*, "recovered" from Vasquez) in San Francisco. The December 2021 affidavits also represented, in footnote 2, that, "[t]o date, VASQUEZ has **not** asked HSI to return the Target Cell Phone and Target Laptop." [ECF No. 185-1, p. 10 n.2 (emphasis added)].

But in an April 9, 2019 email, HSI Special Agent Ko advised that Defendant Vasquez "inquired" about his media and said he was worried about getting fired from his job because he needs the items to do his job. [ECF No. 178-1, p. 3]. During the suppression hearing, HSI Special Agent Benavente testified that Defense Exhibits 2 and 3 "talk about [ ] Vasquez requesting you [*i.e.*, law enforcement agents] to **return** his phone." [ECF No. 190, p. 25: 11—25:16 (emphasis added)].

Special Agent Benavente additionally agreed that Defendant Vasquez "asked [law enforcement agents] to **return** that phone because he said he needed it for business purposes, correct, among other reasons." *Id.* at 25:23–24 (emphasis supplied).

Moreover, according to the United States, during the proffer sessions, neither attorney Frank Rubino (Vasquez's attorney) nor Vasquez himself asked for the return of Vasquez's devices -- but, after one proffer session, Vasquez "ask[ed] [ ] about the status of his devices." *Id.* at 86:8–16 (Testimony of Special Agent Benavente). Because Vasquez stopped cooperating in March 2021, Vasquez's question about his devices had to have been made before March 2021 (*i.e.*, at least nine months before the December 2021 search warrant affidavits mentioned that Vasquez had never asked for the items to be returned).

3

To summarize, the United States executed a search warrant in December 2021 issued by a magistrate judge who was presented with an affidavit: (1) mentioning that the items were recovered two-and-a-half years earlier (in April 2019) and (2) representing that Vasquez had not asked for the items to be returned.

Because the United States relied on a search warrant to search the items in December 2021, it seems that the good faith doctrine may well need to be evaluated (notwithstanding the United States' contrary position).

Given this background, the Columbo-type "one more question" is: Can the United States successfully rely on the good faith doctrine to justify its warrant-based search of the two items (and why, or why not)?

The Undersigned is permitting the briefs to be longer, and to be submitted later, than the earlier-issued parameters. The memoranda are now due on **June 19, 2025,** and the maximum page length is now **35** double-spaced pages, excluding the signature block and certificate of service.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on June 3, 2025.

Jonathan Goodman
CHIEF UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Kathleen M. Williams
All Counsel of Record