UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-20343-KMW

UNITED STATES OF AMERICA

vs.

JORGE MIGUEL VASQUEZ,

**Defendant.**

_____/

## RESPONSE TO DEFENDANT'S OBJECTIONS
## TO REPORT AND RECOMMENDATIONS

The United States of America, through undersigned counsel, respectfully submits this response to defendant Vasquez's objections to the Magistrate Judge's Report and Recommendations (DE 240) (the "R&R") on defendant Vasquez's motion to suppress evidence from his electronic devices (DE 128).[1]  Each of defendant Vasquez's arguments was considered and rejected by the Magistrate Judge, and they deserve the same treatment by this Court.

*First*, the defendant rehashes his argument that the government waived its ability to rely on the good faith exception — despite the Magistrate Judge explicitly finding that the issue had been "amply briefed" by both parties.  The R&R correctly rejected defendant Vasquez's waiver theory, which has never been endorsed by any court.  *See* R&R at 73 n.28.

*Second*, defendant Vasquez asks the Court to break with 40 years of precedent to create a new rule that a validly issued warrant cannot "cure" a "months-long" seizure.  DE 244 at 7.  The defendant concedes that there is no binding authority for this proposed exception to the *Leon* good faith analysis, and the Magistrate Judge correctly rejected the defendant's theory as not a "viable statement of the law in our Circuit."  R&R at 81 n.30.

---

[1] The government incorporates its responses to the motion to suppress (DE 143) and administrative orders (DE 233).

*Third*, the Magistrate Judge correctly concluded that the initial border search was lawful, not just under applicable and binding Eleventh Circuit law, but also Ninth Circuit law at the time of the border search, given that "[t]here was ample evidence to generate the requisite reasonable suspicion" for the search. *Id.* at 52 n.23.

The Court should overrule defendant Vasquez's objections and adopt the Report and Recommendations, with the limited exception of the finding that the nine-month delay in securing a warrant was unreasonable, as described at DE 245.

## I.        THE GOVERNMENT DID NOT WAIVE THE GOOD FAITH EXCEPTION.

The Magistrate Judge correctly concluded that the government did not waive the good faith exception, which defendant Vasquez acknowledges was raised at the earliest opportunity by the government in its initial response to the motion to suppress. *See* DE 244 at 4; DE 143 at 11, 14. The good faith exception was also the subject of extensive post-hearing briefing by both parties at the explicit direction of the Magistrate Judge. *See* DE 233 at 5-6, 14, 29-30 (where the government argued that the good faith exception precludes suppression); DE 234 at 28-35 (where the defendant briefed the opposite position). The Magistrate Judge "reject[ed] the [defendant's] waiver theory" because, among other considerations, "the good faith doctrine has been amply briefed now by both sides." R&R at 73 n.28.

The principal case cited by defendant Vasquez in support of his waiver theory is *United States v. Campbell*, 26 F.4th 860, 869 (11th Cir. 2022), which he argues "should control." DE 244 at 5. There, unlike here, the government did not raise a good faith exception argument until post-hearing briefing. Nevertheless, the court found that the argument was not waived, even though it was addressed exclusively in post-hearing supplemental briefing at the direction of the district

court.[2]  And the Eleventh Circuit has declined to find waiver where the government raised an argument for the first time at a later stage, in an objection to the magistrate judge's report and recommendation.  *See United States v. Hernandez-Cano*, 808 F.2d 779, 782 n.2 (11th Cir. 1987) (finding that "the issue of exigent circumstances is properly before this court" where the government first "argued the existence of exigencies in its objection to the magistrate's report" and the "district court expressly considered and ruled on exigent circumstances . . . relying on evidence developed at the suppression hearing before the magistrate").

Defendant Vasquez's argument that the government somehow effected a waiver by raising the good faith exception in its initial response to the motion to suppress, in which the government also took the position that the Court "need not" reach the good faith doctrine in order to dispose the motion, finds no support in the case law and was considered and rejected by the Magistrate Judge.  *See* R&R at 73 n.28.  The Magistrate Judge's rejection of defendant Vasquez's waiver theory is consistent with *Campbell*, which emphasized that waiver requires an "intentional relinquishment or abandonment of a known right" and concluded that (like here) "the government never made any statement that could reasonably be understood to be an affirmative waiver of the good-faith exception."  26 F.4th at 872, 889 (citing *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004)).  An example of a waiver set out in *Campbell* involved the State of Colorado "explicitly stating in writing that it would 'not challenge' the timeliness of the habeas petition in both its preanswer response and its full answer to the habeas petition."  *Id.* (citing *Wood v. Milyard*, 566 U.S. 463, 467 (2012)).  Affirmatively stating in two separate filings that the government would not make an argument is a far cry from raising the good faith exception, while taking the position that the Court need not reach

---

[2] Even after neither party raised good faith on appeal, the Eleventh Circuit "conclude[d] that we have the power to reach the good-faith exception in this case and exercise our discretion to do so."  *Campbell*, 26 F.4th at 865.

the exception to resolve the motion — a customary form of alternative argument and appeal to judicial economy — followed by extensive supplemental briefing on the issue by both parties, including a brief from the government affirmatively arguing that the good faith exception precludes suppression, all before the Magistrate Judge issued a report and recommendations on the motion.[3]

The government is aware of no court finding waiver in remotely similar circumstances, and the defendant's citation to inapposite cases only demonstrates the weakness of his argument. *See Cole v. U.S. Att'y Gen.*, 712 F.3d 517, 530 (11th Cir. 2013), *abrogated by Nasrallah v. Barr*, 590 U.S. 573, 578 (2020) (finding no waiver in the inapposite context of an appeal from the Board of Immigration Appeals because the petitioner adequately raised in his appellate brief the issue of whether his conviction triggered removal); *United States v. Harding*, 104 F.4th 1291, 1300 (11th Cir. 2024) (finding no waiver in the inapposite context of whether an argument was preserved on appeal because the appellant adequately raised the denial of a limiting instruction in a single paragraph of his appellate brief, even though he cited no authority and challenged the admission of evidence, not the denial of a limiting instruction specifically); *Fils v. City of Aventura*, 647 F.3d 1272, 1285 (11th Cir. 2011) (finding, in an inapposite Section 1983 excessive force proceeding against a police officer, that the district court improperly "concoct[ed] factual allegations on the plaintiff's behalf" by presuming that she was tased when she lost consciousness, a fact she "never alleged, alluded to, or mentioned during the litigation").

Defendant Vasquez claims he was prejudiced because he "did not examine the government's witnesses on any issues related to good faith" and did not "probe[] whether" the footnote in the search warrant affidavit [Footnote 2] characterizing the absence of a request for the return of his

---

[3] Defendant Vasquez first raised a waiver argument in post-hearing briefing and moved for and received discovery after the evidentiary hearing in connection with an argument he failed to raise before the close of evidence. DE 215, 221.

devices "was, or was not, relevant to a good faith analysis." DE 244 at 6. But the purpose of an evidentiary hearing is to resolve disputed facts, not to engage in legal analysis about the relevance of a particular footnote to the judge issuing the warrant. *See Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (noting that the purpose of an evidentiary hearing is to resolve "disputes of fact").

The only factual issue defendant Vasquez identifies as having any bearing on the good faith analysis is whether Footnote 2 in the search warrant affidavit (GX-18 at 10) accurately characterized the nature and extent of defendant Vasquez's inquiries about the return of his devices. The defendant acknowledges, as he must, that "there were questions about whether Mr. Vasquez or his counsel had requested the return of his devices." DE 244 at 6. Indeed, the topic was the subject of extensive questioning and testimony throughout the hearing, *see* DE 190 at 13, 15, 25-26, 68-69, 83, 86, 115, 141, 169, and was fully aired in the parties' supplemental briefing. *See* DE 233 at 5-6, 14, 29-30; DE 234 at 28-35. The Magistrate Judge spent significant time addressing Footnote 2 — over the course of 15 pages in his 82-page report. *See* R&R at 66-81.

Defendant Vasquez does not explain how unspecified additional examination of "issues related to good faith" would bear on the good faith analysis, which is an objective test of whether the facts were fully presented to the warrant-issuing magistrate judge. *See United States v. Leon*, 468 U.S. 897, 919 n.20, 922 n.23 (1984) ("We emphasize that the standard of reasonableness we adopt is an objective one . . . We also eschew inquiries into the subjective beliefs of law enforcement officers who seize evidence pursuant to a subsequently invalidated warrant . . . Our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization."); *United States v.*

5

*Robinson*, 336 F.3d 1293, 1297 (11th Cir. 2003) ("[W]e discern no reason why th[e] burden" of

showing the applicability of the *Leon* good faith exception "cannot be met by reference to facts

stated within the affidavit.").  The Magistrate Judge correctly concluded that "the United States has

met its burden to demonstrate the applicability of the good faith doctrine," and also acknowledged

that "the primary alleged false or misleading statement hinges on a semantic difference in a brief

footnote," which does not concern "the existence of probable cause."  R&R at 81.  Given that

defendant Vasquez has not identified any issue that was not fully aired in a timely manner before the

Magistrate Judge that would bear on the good faith analysis, the Court should adopt the Magistrate

Judge's rejection of the defendant's waiver theory.

## II.     THE MAGISTRATE JUDGE CORRECTLY APPLIED THE GOOD FAITH EXCEPTION.

Defendant Vasquez asks the Court to discard the *Leon* good faith standard and adopt a new

rule that "no warrant, however valid, can retroactively sanitize a months-long unconstitutional

seizure." DE 244 at 7.  The Court should not do so.  As an initial matter, the Magistrate Judge found

that the initial border seizure in this case was *constitutional.*  R&R at 58.  Moreover, it has been

settled law for more than four decades that "the marginal or nonexistent benefits produced by

suppressing evidence in objectively reasonable reliance" on a validly issued warrant "cannot justify

the substantial costs of exclusion."  *Leon*, 468 U.S. at 922.  As a result, the *Leon* good faith

exception applies in all but four limited circumstances:

> (1) where the magistrate . . . in issuing a warrant was misled by information in an affidavit
> that the affiant knew was false or would have known was false except for his reckless
> disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role in
> the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 60 L. Ed. 2d 920, 99
> S. Ct. 2319 (1979); (3) where the affidavit supporting the warrant is so lacking in indicia of
> probable cause as to render official belief in its existence entirely unreasonable; and (4)
> where, depending upon the circumstances of the particular case, a warrant is so facially

deficient — i.e., in failing to particularize the place to be searched or the things to be seized — that the executing officers cannot reasonably presume it to be valid.

*United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002) (quotations omitted).

While acknowledging that there is no binding authority for his argument, defendant Vasquez asks the Court to graft a new carveout onto the *Leon* good faith doctrine in situations where "an officer waits an unreasonably long time" (here, nine months) "to obtain a search warrant." DE 244 at 7. The Magistrate Judge considered and correctly rejected this argument:

> Vasquez also argues that "the good faith exception cannot cure an impermissibly prolonged seizure." [ECF No. 234, p. 31]. But he does not cite any applicable Eleventh Circuit law for this proposition, and the Undersigned is unwilling to adopt that topic heading as a viable statement of the law in our Circuit.

R&R at 81 n.30. It does not appear to be a viable statement of the law in any circuit.

Defendant Vasquez appears to have based this argument on a lone, out-of-circuit district court opinion in *United States v. Wilkins*, 538 F. Supp. 3d 49, 95 (D.D.C. 2021), which conducted a nationwide survey and identified two non-binding opinions (in the Ninth and Seventh Circuits), that purportedly stand for the minority view that a prolonged delay in obtaining a warrant forecloses application of the *Leon* good faith doctrine. Upon review, however, those cases stand for no such thing. In *United States v. Song Ja Cha*, 597 F.3d 995, 1003 (9th Cir. 2010), the court affirmed the suppression of evidence in an inapposite situation where the police engaged in "deliberate, systematic, and culpable" conduct in seizing a *residence* for 26.5 hours before obtaining a residential search warrant, while the homeowner waited outside without access to his medication. In *Song Ja Cha*, it was not that the delay rendered *Leon* inapplicable, but rather the court found in applying *Leon* that no "reasonably well trained officer" would have thought a seizure conducted in such a way was lawful. *Id.* at 1005. In *United States v. Burgard*, 675 F.3d 1029, 1030 (7th Cir. 2012), where an

7

officer conducted a warrantless seizure of a car passenger's cell phone during a traffic stop under the exigent circumstances exception and obtained a warrant six days later, the court affirmed the denial of a motion to suppress, finding that the delay was not constitutionally unreasonable.  *Id.* at 1035. While the court did not reach the application of the good faith exception, the court noted that there may be hypothetical cases where *Leon* might not apply to unreasonably delayed warrants.  *Id.* at 1036.  The court declined to "categorically rule out the possibility of a *Leon* argument in this line of cases" and emphasized that the court was making the uncontroversial point that "the good-faith exception is not automatically available as soon as a warrant materializes."  *Id*.

In *Wilkins* itself, officers seized a cell phone incident to arrest that was "inadvertently retained" "for over 15 months with no real justification — and certainly no probable cause or reasonable suspicion."  538 F. Supp. 3d at 94.  Unlike here, where defendant Vasquez was in a cooperative posture for the majority of the time between the border search and the issuance of a warrant, and where the government walked through incriminating chat messages *from the device* with the defendant, Wilkins was merely a person of interest and the government had no information whatsoever about the contents of his device.  *See id.*  The district court in *Wilkins* declined to apply the good faith exception because the court found that the seizure itself was unconstitutional.  *See id.* at 95 (finding an "utter lack of justification for . . . the initial seizure").  Here, the Magistrate Judge found the initial border seizure *lawful* under applicable law.  There is no basis for defendant Vasquez's proposed new carveout to the good faith doctrine.

Here, the issuing magistrate judge was made aware of all material facts relevant to the timeline of the government seeking the warrant, including that the border search occurred in April 2019 and that the government was applying for the search warrant in December 2021.  *See*

GX-18 at 5.  The magistrate judge was also apprised that defendant Vasquez had started cooperating

pursuant to a limited immunity agreement in November 2019 and terminated that cooperation in

March 2021, nine months before the government applied for the warrant.  *Id.* at 16.  The issuing

magistrate judge, fully aware of the timing of the seizure pursuant to border search authority and the

search warrant application, could have found that too much time had passed.  But having issued the

warrant, there is no basis to conclude that the agents who relied on an undisputedly valid warrant

were "acting in an entirely unreasonable manner."  *United States v. Barnard,* No. 24-cr-20287, 2025

WL 699477, at *11 (S.D. Fla. Feb. 22, 2025) (citing *United States v. Martinez-Martinez*, 777 F.

App'x 441, 446 (11th Cir. 2019)) ("Asking 'whether a reasonably well trained officer would have

known that the search was illegal despite the magistrate's authorization,' . . . we see nothing in the

record that would so indicate.").  The R&R correctly applied the good faith exception.

## III.    THE MAGISTRATE JUDGE CORRECTLY FOUND THAT THE BORDER SEARCH WAS LAWFUL.

The Magistrate Judge correctly applied Eleventh Circuit law — the law of the place of the

search — in concluding that the border search was lawful.  R&R at 58.  Defendant Vasquez argues

that Ninth Circuit law should govern the border search, continuing here what the R&R described as a

"strategy of classifying the interaction at SFO as a 'seizure,'" a viewpoint the Magistrate Judge

found "not convincing or compelling."  *Id.* at 49.  As the government noted in its post-hearing brief,

> [D]efendant Vasquez mischaracterizes aspects of the border search that took place at SFO airport, attempting to conflate them with the device searches.  All parties agree that the device searches occurred in Miami, which is separate and distinct from the inspection of defendant Vasquez's person and baggage pursuant to Title 19 and its implementing regulations.  Defendant Vasquez has not challenged those aspects of the border search, which have never required any level of suspicion in any circuit.  Nor is he seeking to suppress the fruits of any part of the border search other than the search of his devices, which undisputedly took place in Miami.

DE 233 at 4. Contrary to defendant Vasquez's claim that the court "rel[ied] in large part on a stipulation" between the parties in concluding that the seizure occurred in Miami, DE 244 at 11, the Magistrate Judge based his conclusion not only on the stipulation that SA Ko "documented the detention of the devices" at SFO airport and that his role was "limited to 'bagging and tagging' the devices and shipping them to HSI Miami," but substantial "hearing evidence . . . that an incorrect form was used" using the word "seizure" and the "innocuous reason for the use of the incorrect form," and "that HSI 'seized' the devices in Miami after 'HSI Miami agents discovered evidence of the ongoing money laundering conspiracy.'" R&R at 49-50.

Moreover, the Magistrate Judge concluded that the *search* took place in Miami; the defendant's continued attempts to locate a "seizure" at SFO airport do not affect the analysis:

> [E]ven if the Undersigned were to conclude that the devices were in fact 'seized' at SFO, this point is legally irrelevant. The choice-of-law assessment depends on the location of the *search*, not the location of the initial seizure. Vasquez has not cited any case finding that the place of the seizure trumps the location of the search as the key to unlocking the choice-of-law analysis.

> That means that Eleventh Circuit law applies.

*Id.* at 50. As the Magistrate Judge noted, "[n]early all of the district courts confronted with a similar issue . . . have found that the search should be governed by the law of the place where the *search* occurred." *Id.* at 47 (citing *United States v. Ayvazyan,* 20-cr-579, ECF No. 296, at 8 (C.D. Cal., Apr. 27, 2021)). "Vasquez has not cited legal authority where a court has found *lex loci* to be where a device happened to be 'bagged and tagged,' looking instead to where the device was actually *searched.*" *Id.* at 49.

Defendant Vasquez appears to concede that the search was "physically conducted" in Miami, DE 244 at 12, but argues that Miami is really the "functional equivalent" of San Francisco — a novel

concept unsupported by any case law.  *See id.* at 11 (citing out of context agent testimony that the government's border search authority extends from San Francisco to South Florida to the extent a device has not cleared customs and entered the country).  The Magistrate Judge correctly rejected this argument:

> SA Benavente testified that although Miami was not the border Vasquez crossed, "[t]hey were still in the functional border for [law enforcement][,]" because the devices never cleared customs. [DE 190] at 111 ("We're not creating a border.  Our border authority still extends from San Francisco to South Florida.") . . . . Vasquez crossed the border in San Franscisco, but the border search of his devices took place in Miami.

R&R at 27-28.

Defendant Vasquez claims that no court has answered the choice-of-law question of what law applies to a search that is "physically conducted in a different jurisdiction that provides reduced Fourth Amendment protections."  DE 244 at 12.  But as the Magistrate Judge noted:

> [C]ourts routinely address questions involving a device detained at one airport and transported to another district for forensic analysis. *See*, *e.g.*, *Pulido*, 2021 WL 3476600, at *3–6 (applying Eleventh Circuit law where the defendant "reentered the United States through the Dallas/Fort Worth International Airport[,] CBP conducted a border search of [the defendant,] and sent two electronic devices he had with him at the time — an Apple iPhone and an Apple MacBook — to [HSI] in Tampa" for "subsequent forensic analysis."

R&R at 48-49.

Even if the Court were inclined to apply Ninth Circuit law, although there is no basis to do so, the Magistrate Judge correctly found that "the search complied with binding Ninth Circuit precedent **at the time of the search**" because the Ninth Circuit had not yet clarified that border searches must be limited to contraband only.  *Id.* at 52 (emphasis in original).  As the R&R noted, "Several years after *Cotterman* announced a reasonable suspicion requirement for forensic searches of devices, the Ninth Circuit announced for the first time that agents must have reasonable suspicion for contraband in particular." *Id.*  Contrary to defendant Vasquez's characterization, this was not an

"argument" by the Magistrate Judge, but a faithful summary of the development of the law in the Ninth Circuit between *Cotterman* and *Cano*.

Additionally, if the Court were to impose the Ninth Circuit's reasonable suspicion requirement — despite this Circuit's approval of forensic searches for all law enforcement purposes without any level of suspicion, *see Pulido*, 2021 WL 3476600, at *6 — the Magistrate Judge concluded that "[t]here was ample evidence to generate the requisite reasonable suspicion." R&R at 52 n.23. As noted in the R&R, "[t]he government's post-hearing memorandum [ECF No. 233, pp.19-20] outlines the evidence of reasonable suspicion acquired before the border search." *Id.* This evidence included unexplained cash in the residence of a foreign official (defendant Bautista); multiple half-million dollar remittances from defendant Bautista's bank account; a property purchase evidently to hide assets; "loan" agreements signed by defendant Bautista, millions of dollars in transfers from two foreign shell companies (Mega Achieve and Mantova International) to front companies in the Southern District of Florida; large dollar transactions sent in close sequence and broken down to amounts of approximately $500,000 from Mega Achieve and Mantova International to defendant Bautista's company; suspicious wire transfers from the same foreign shell companies (Mega Achieve and Mantova International) to U.S. based front companies, where defendant Vasquez served as a director; payroll records showing that defendant Vasquez was employed by Smartmatic, which had won elections-related contracts valued at more than $180 million — awarded by defendant Bautista.

All of this evidence gathered *before* the border search explains why the Magistrate Judge found it "not . . . difficult" to conclude that there was reasonable suspicion for the search, even though applicable law does not require any level of suspicion. The Magistrate Judge correctly

concluded that "the initial border search was not unlawful under applicable and binding Eleventh Circuit law," and that "the search complied with binding Ninth Circuit precedent at the time of the search." *Id.* at 52.

## CONCLUSION

For the foregoing reasons, the Court should overrule the defendant's objections and adopt the Report and Recommendations, with the limited exception of its finding that the nine-month delay in securing a warrant was constitutionally unreasonable, as described at DE 245.

Respectfully submitted,

LORINDA I. LARYEA
Acting Chief

JASON A. REDING QUIÑONES
United States Attorney

*/s/ Connor Mullin*
*/s/ Jil Simon*

*/s/ Robert J. Emery*

_____
CONNOR MULLIN (A5503222)
JIL SIMON (A5502756)
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue NW
Washington, DC 20530
Tel: (202) 993-4828
connor.mullin2@usdoj.gov

_____
ROBERT J. EMERY
Assistant U.S. Attorney
Southern District of Florida
Court ID No. A5501892
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9421
Robert.Emery2@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via CM/ECF on August 20, 2025, and therefore on all counsel of record.

/s/ *Connor Mullin*
_____
Connor Mullin
Trial Attorney