UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 24-CR-20343-KMW

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ROGER ALEJANDRO PIÑATE MARTINEZ, and
JORGE MIGUEL VASQUEZ,

    Defendants.
_____/

## MOTION FOR THE RELEASE OF GRAND JURY TRANSCRIPTS

Jorge Vasquez respectfully requests that the Court order the release of the transcript of Special Agent Cole Almeida's testimony before the Grand Jury. At a hearing on March 4, 2025, the Court told the parties that "at some point I am going to ask the Government to provide the testimony of the agent before the Grand Jury prior to trial…" Mr. Vasquez asks that the Court order that production now, instead of waiting for the eve of trial.

**Relevant Factual and Procedural Background**

Prior to the return of the indictment in this case, the Government notified Mr. Vasquez that he was a target of its investigation into a bribery and money laundering scheme. Mr. Vasquez, with previous counsel, met with the Government and Special Agents through 2019 and 2020, subject to a written proffer agreement. During these meetings, Mr. Vasquez truthfully answered the Government's questions. Mr. Vasquez never admitted to knowledge of a bribery scheme, never used

the term "slush fund," and never agreed that payments he received were either "kickbacks" or "embezzlement."

After the proffer sessions, HSI Special Agent ("SA") Cole Almeida wrote reports of investigation ("ROIs") purportedly documenting Mr. Vasquez's statements and summarizing his interpretations and impressions of the meetings with Mr. Vasquez. While the ROIs begin with a caution that the reports are non-verbatim accounts, the reports also attribute direct quotes to Mr. Vasquez by using quotation marks or alleging that Mr. Vasquez "stated" a particular term or conclusion. The Government has produced the ROIs from this meeting, as well as SA Almeida's notes, to the defense. The mischaracterization of Mr. Vasquez's statements, in both the ROIs and the contemporaneous notes, raised more questions than they answered. One specific question that Mr. Vasquez must ask is whether these mischaracterizations and misquotations were also presented to the Grand Jury to obtain an indictment.

In December of 2024, prior defense counsel filed a motion concerning the misstatements in SA Almeida's reports, requesting the Court exclude the statements from trial and order production of the rough notes and drafts of the reports. (DE 77). Mr. Vasquez was understandably alarmed that SA Almeida memorialized purported confessions to conspiring to violate the FCPA and to embezzling funds from Smartmatic – even though such confessions never happened.

In response to Mr. Vasquez's motion, the Government produced the rough notes but argued that any further action by the Court was premature or unwarranted. (DE 88). Of understandable and significant concern to the defense, the

2

Government agreed that Mr. Vasquez never uttered the words "bribe," "kickback," or "embezzlement," despite those words being attributed to him in SA Almeida's ROIs. (DE 88 at 8).

At a hearing on the motion, the Government advised the Court that it did not intend to introduce Mr. Vasquez's statements during its case-in-chief. *See* Exhibit A, transcript of March 4, 2025, hearing, p.5. Given this representation, the Court determined that there was no need to address the remedies sought by the defense at that time. However, the Court conveyed to the Government that it expected SA Almeida's Grand Jury testimony would be disclosed to the defense. The Government clarified to the Court that SA Almeida's testimony would not constitute *Jencks* material if SA Almeida was not called as a witness. Despite this clarification, the Court stated, "As I have indicated, at some point, I am going to ask the Government to provide the testimony of the agent before the Grandy Jury prior to trial but I'm not asking them to do that now." Exhibit A, p. 18. Mr. Vasquez has already established the need for the testimony, the Court has already made clear it should be turned over, and this Motion simply and respectfully asks the Court to order the production of the transcript now.

## Legal Standard

The party seeking the disclosure of grand jury material "must show a compelling and particularized need[.]" *United States v. Aisenberg,* 358 F.3d 1327, 1348 (11th Cir. 2004); *see also Douglas Oil Co. of California v. Petrol Stops Northwest,* 441 U.S. 211 (1979). Under the rubric of Federal Rule of Criminal Procedure

3

6(e)(3)(E)(i), "particularized need" breaks down into prongs: "(1) that the material [sought] is needed to avoid a possible injustice in another judicial proceeding; (2) that the need for disclosure is greater than the need for continued secrecy; and (3) that the request is structured to capture only the material so needed." *United States v. Davis*, 721 F. App'x 856, 860 (11th Cir. 2018). In other words, the moving party must show that "circumstances ha[ve] created certain difficulties peculiar to th[e] case, which could be alleviated by access to *specific* grand jury materials, without during harm to the salutary purpose of secrecy embodied in the grand jury process[.]" *United States v. Liuzzo*, 739 F.2d 541, 545 (11th Cir. 1984) (emphasis in original).

## Argument

The mischaracterizations and misquotations rampant throughout SA Almeida's ROIs leave open the possibility of significant injustice as Mr. Vasquez prepares for trial and in trial itself. Under Rule 6(e)(3)(E)(i), "the court may authorize disclosure – at a time, in a manner, and subject to any other conditions that it directs – of a grand jury matter ... preliminarily to or in connection with a judicial proceeding[,]" provided there is a "compelling and particularized need." *Aisenberg*, 358 F.3d 1348. And under Rule 6(e)(3)(E)(ii), the court may authorize disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." In deciding whether this burden has been satisfied, district courts have "substantial" discretion, *id*. at 1349, because the standard is a "highly flexible one, adaptable to different circumstances." Mr. Vasquez makes this narrow request for SA Almeida's testimony

to avoid injustice as he files pretrial motions and prepares his defense (including his decision whether to testify or not).

SA Almeida's ROIs would have a reader believe that Mr. Vasquez confessed to the crimes of which he is accused, using the language of statutes laid out in the indictment. In fact, Mr. Vasquez neither confessed nor used the words attributed to him in SA Almeida's ROIs. Given the extreme liberty that SA Almeida took in his written summaries, Mr. Vasquez is left to ask whether there were constitutional violations that substantially influenced the Grand Jury's decision to indict. If SA Almeida took the same liberties in his testimony as he did in his ROIs, Mr. Vasquez has grave doubts as to whether the Grand Jury proceedings were fundamentally fair. It is hard to imagine more convincing evidence than a confession; so, the decision to indict based on confessions that never happened would render the proceedings fundamentally unfair. A fabricated admission from a defendant is the most prejudicial kind of evidence as it goes directly to *mens rea* and knowledge. To determine whether Mr. Vasquez can or must raise these issues of constitutional violations and fundamental unfairness to the Court in pretrial motions, he needs to see SA Almeida's testimony before the grand jury.

Even if the Government does not intend to call SA Almeida as a witness, it acknowledges that his testimony could be used to impeach Mr. Vasquez should he choose to testify. Mr. Vasquez's decision about whether to testify should be made with eyes wide open – that is, if SA Almeida would testify that Mr. Vasquez confessed, as he alleges in his ROIs, Mr. Vasquez should know that before taking the stand. And if

5

SA Almeida's Grand Jury testimony about Mr. Vasquez's statements was different than written in his ROIs, Mr. Vasquez should be aware of that too. To withhold SA Almeida's Grand Jury testimony under the circumstances is to limit Mr. Vasquez's ability to prepare his defense, including his decision about testifying.

The need for disclosure in this case is greater than the need for ongoing secrecy. Here, the reasons for secrecy have largely dissipated. The Grand Jury proceedings concluded a year ago when the Grand Jury returned the indictment. The defense is aware of SA Almeida's involvement in the case and much of his role is known through his ROIs. The only matter that Mr. Vasquez does not know about SA Almeida is whether he made the same misrepresentations to the Grand Jury that he made in his ROIs. Disclosure at this stage would not endanger jurors, reveal deliberations, or chill future witnesses.

By contrast, the need for disclosure is compelling. Mr. Vasquez knows that his statements have been mischaracterized, misquoted, and embellished by SA Almeida in the ROIs. If the same false account was repeated to the Grand Jury, the resulting indictment may have rested on materially false testimony. Without access to the transcript, Mr. Vasquez – and this Court – cannot determine whether a constitutional violation occurred.

The limited production of SA Almeida's testimony will permit Mr. Vasquez and the Court to assess whether the Grand Jury process was tainted; and it will allow Mr. Vasquez to make a knowing and voluntary decision about whether to testify. Of course, all transcripts will be subject to the protective order in this case. The balance

6

weighs decisively in favor of this limited disclosure and this is precisely the type of particularized need contemplated by *Douglas Oil* and its progeny.

Mr. Vasquez has demonstrated a compelling and particularized need for the transcript of SA Almeida's Grand Jury testimony. He respectfully requests that the Court order the Government to produce the corresponding transcripts as it indicated the Government would be required to do during the March 4, 2025 hearing. The Government opposes this motion.

Respectfully submitted,

**MARKUS/MOSS PLLC**
40 N.W. Third Street
Penthouse One
Miami, Florida 33128
Tel: (305) 379-6667
markuslaw.com

/s/ *Lauren Field Krasnoff*
Lauren Field Krasnoff
Florida Bar Number 0086951
lkrasnoff@markuslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF system with the Clerk of Court which sent an e-mail notification of such filing to all CM/ECF participants on October 14, 2025.

/s/ *Lauren Field Krasnoff*
Lauren Field Krasnoff